Nos. 2016-1327, -1328, -1419, -1420

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

ZOND LLC,

*Appellant*,

*v.*

THE GILLETTE COMPANY, ADVANCED MICRO DEVICES, INC., RENESAS
ELECTRONICS CORPORATION, RENESAS ELECTRONICS AMERICA, INC.,

*Appellees.*

Appeals from the United States Patent and Trademark Office, Patent Trial and
Appeal Board in Nos. IPR2014-00477, IPR2014-00479, IPR2014-00799,
IPR2014-00803, IPR2014-00855, IPR2014-00858, IPR2014-00995,
IPR2014-00996, IPR2014-01042, and IPR2014-01061.

## BRIEF FOR APPELLEES

DAVID L. CAVANAUGH
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 663-6000

MARK G. MATUSCHAK
MARK C. FLEMING
ERIC F. FLETCHER
LARISSA BIFANO PARK
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

*Attorneys for Appellee The Gillette
Company*

June 20, 2016

*Additional Counsel Listed on Inside Cover*

RYAN K. YAGURA
XIN-YI ZHOU
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
(213) 430-6000

BRADLEY N. GARCIA
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
(202) 383-5300

*Attorneys for Appellee Advanced Micro
Devices, Inc.*

JOHN J. FELDHAUS
PAVAN K. AGARWAL
MICHAEL R. HOUSTON
GEORGE E. QUILLIN
FOLEY & LARDNER LLP
3000 K Street, NW, Suite 600
Washington, DC  20007
(202) 672-5300

MICHAEL R. HOUSTON
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL  60654
(312) 832-4500

*Attorneys for Appellees Renesas
Electronics Corporation and
Renesas Electronics America, Inc.*

## CERTIFICATE OF INTEREST

Counsel for Appellee The Gillette Company certifies the following:

1.    The full name of every party or *amicus* represented by us is:

The Gillette Company

2.    The names of the real party in interest represented by us is:

Not Applicable.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Procter & Gamble Co.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

WILMER CUTLER PICKERING HALE AND DORR LLP:  David L. Cavanaugh, Eric F. Fletcher, Mark C. Fleming, Mark G. Matuschak, Larissa Bifano Park, Michael Diener (former)

Dated:  June 20, 2016

/s/ Mark G. Matuschak
MARK G. MATUSCHAK
WILMER CUTLER PICKERING
  HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

## CERTIFICATE OF INTEREST

Counsel for Appellee Advanced Micro Devices, Inc. certifies the following:

1.      The full name of every party or *amicus* represented by us is:

Advanced Micro Devices, Inc.

2.      The names of the real party in interest represented by us is:

Advanced Micro Devices, Inc.

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

O'MELVENY & MYERS LLP:  Ryan K. Yagura, Xin-Yi Zhou, Bradley N. Garcia, Brian M. Berliner

Dated:  June 20, 2016

/s/ Ryan K. Yagura
RYAN K. YAGURA
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA  90071
(213) 430-6000

# CERTIFICATE OF INTEREST

Counsel for Appellees Renesas Electronics Corporation and Renesas Electronics America, Inc. certifies the following:

1.    The full name of every party or *amicus* represented by us is:

Renesas Electronics Corporation and Renesas Electronics America, Inc.

2.    The names of the real party in interest represented by us is:

Renesas Electronics Corporation and Renesas Electronics America, Inc.

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

Renesas Electronics America, Inc. is a wholly-owned subsidiary of Renesas Electronics Corporation.  The following publicly held corporation owns 10 percent or more of the stock of Renesas Electronics Corporation:  Innovation Network Corporation of Japan.

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

FOLEY & LARDNER LLP:  John J. Feldhaus, Pavan K. Agarwal, Michael R. Houston, and George E. Quillin

Dated:  June 20, 2016

/s/ John J. Feldhaus
JOHN J. FELDHAUS
FOLEY & LARDNER LLP
3000 K Street, NW, Suite 600
Washington, DC  20007
(202) 672-5300

# TABLE OF CONTENTS

Page

CERTIFICATES OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ..................................................................... vi

STATEMENT OF RELATED CASES .......................................................... 1

INTRODUCTION ................................................................................... 2

STATEMENT OF ISSUE ON APPEAL ....................................................... 4

STATEMENT OF THE CASE .................................................................... 4

    A.    Technology Background ........................................................ 4

        1.    Plasma ........................................................................ 4

        2.    Arcing and arc suppression ........................................ 6

    B.    The Prior Art ...................................................................... 7

        1.    Wang ........................................................................... 7

        2.    Kudryavtsev ............................................................. 11

    C.    Zond's '184 and '155 Patents .......................................... 11

        1.    Background Regarding the '155 and '184 Patents ..... 12

    D.    Proceedings Below ............................................................ 15

SUMMARY OF THE ARGUMENT ......................................................... 17

ARGUMENT ...................................................................................... 19

I.    STANDARD OF REVIEW .................................................................. 19

II.    THE BOARD PROPERLY FOUND THE '184 AND '155 CLAIMS
    UNPATENTABLE ............................................................................ 20

A.     The Board Properly Construed "Without Forming An Arc" ...................................................................20

B.     Wang Meets The "Without Forming An Arc" Limitation Under Any Reasonable Claim Construction ......................................26

CONCLUSION .........................................................................................30

ECF-3(B)(2) REPRESENTATION

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Chimie v. PPG Industries, Inc.*,
   402 F.3d 1371 (Fed. Cir. 2005) ........................................................25

*Fujitsu Ltd. v. Netgear Inc.*,
   620 F.3d 1321 (Fed. Cir. 2010) ........................................................24

*Howmedica Osteonics Corp. v. Zimmer, Inc.*,
   No. 15-1232, __ F.3d __, 2016 WL 2754049 (Fed. Cir. May 12,
   2016) .................................................................................................21

*In re Cortright*,
   165 F.3d 1353 (Fed. Cir. 1999) ........................................................21

*In re Cuozzo Speed Technologies, LLC*,
   793 F.3d 1268 (Fed. Cir. 2015), *aff'd*, No. 15-446, slip op. 20 (U.S.
   June 20, 2016) ...................................................................................19

*In re Man Machine Interface Technologies LLC*,
   No. 15-1562, __ F.3d __, 2016 WL 1567181 (Fed. Cir. Apr. 19,
   2016) .................................................................................................30

*In re NTP, Inc.*,
   654 F.3d 1279 (Fed. Cir. 2011) ........................................................21

*In re Roslin Institute (Edinburgh)*,
   750 F.3d 1333 (Fed. Cir. 2014) ........................................................19

*In re Watts*,
   354 F.3d 1362 (Fed. Cir. 2004) ........................................................30

*Kaneka Corp. v. Xiamen Kingdomway Group Co.*,
   790 F.3d 1298 (Fed. Cir. 2015) ........................................................24

*KSR International Co. v. Teleflex Inc.*,
   550 U.S. 398 (2007).........................................................................19

*LizardTech, Inc. v. Earth Resource Mapping, Inc.*,
    424 F.3d 1336 (Fed. Cir. 2005) .......................................................................26

*Microsoft Corp. v. Proxyconn, Inc.*,
    789 F.3d 1292 (Fed. Cir. 2015) ..................................................................19, 25

*Modine Manufacturing Co. v. United States International Trade*
    *Commission*,
    75 F.3d 1545 (Fed. Cir. 1996), *abrogated on other grounds by*
    *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    234 F.3d 558 (Fed. Cir. 2000) ........................................................................25

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2006) ......................................................................23

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc) ..................................................21, 23

*Power-One, Inc. v. Artesyn Technologies, Inc.*,
    599 F.3d 1343 (Fed. Cir. 2010) ......................................................................20

*Teva Pharmaceuticals USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015)......................................................................................19

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    593 F.3d 1289 (Fed. Cir.), *reh'g en banc granted on other*
    *grounds*, 374 F. App'x 35 (Fed. Cir. 2010), *opinion reinstated in*
    *part*, 649 F.3d 1276 (Fed. Cir. 2011)...........................................................24, 25

## STATUTES

35 U.S.C.
    § 103.................................................................................................................4
    § 112, ¶ 1 (2000) ...........................................................................................24

## STATEMENT OF RELATED CASES

No appeal in this case was previously before this Court or any other court. These appeals challenge four Final Written Decisions by the Patent Trial and Appeal Board ("the Board") in *inter partes* reviews of the claims of United States Patent Nos. 7,808,184 ("the '184 patent") and 8,125,155 ("the '155 patent") held by Appellant Zond LLC.

The parties were also involved in twenty nine other consolidated *inter partes* reviews, in which the Board also found all claims of eight related patents unpatentable. Zond has filed appeals to this Court in all of these cases, which have been docketed and consolidated as Nos. 16-1234, -1389, -1391, -1393, -1427, -1423, -1433, -1563, -1888, -1890, and -1892. Zond has subsequently dismissed its appeals with respect to two of the related patents, in the 16-1563, -1888, -1890, and -1892 cases.

Two pending district court actions may be affected by the Court's decision in this appeal. In *Zond v. Renesas Elec. Corp.*, No. 1:13-cv-11625-NMG (D. Mass.) and *Zond v. Gillette Co.*, No. 1:13-cv-11567-DJC (D. Mass.), Zond asserts that appellees Gillette and Renesas infringe the '184 Patent and several other patents. Zond also alleges that Gillette infringes the '155 Patent.[1]

---

[1] AMD and Renesas were not petitioners for the inter partes reviews of the '155 patent, and therefore join only the portion of this brief relevant to the '184 patent.

Other than the foregoing, counsel for Appellees are not aware of any case pending in this or any other court that will directly affect or be directly affected by this Court's decision in this case.[2]

## INTRODUCTION

In 2013, Appellant Zond filed seven lawsuits against different defendants, including the Appellees in this action, alleging that they infringe a variety of patents related to plasma sputtering and etching processes.  The defendants included some of the world's largest technology companies involved in semiconductor manufacturing—including Intel, AMD, GlobalFoundries, Fujitsu, Renesas and Toshiba—as well as razor and personal care product leader The Gillette Company.

After Zond filed suit, many of the named defendants filed petitions for *inter partes* review of Zond's asserted patents.  The Board instituted review on all 371 claims across ten Zond patents—every claim challenged in a petition—and has now issued final decisions finding every single claim unpatentable.  This consolidated appeal arises out of four Board decisions that found all claims in Zond's '184 and '155 patents unpatentable.

---

[2] In addition to Appellees, Intel Corporation; Taiwan Semiconductor Manufacturing Company, Ltd; GlobalFoundries U.S., Inc.; Fujitsu Semiconductor Limited; and Toshiba Corporation also successfully petitioned for *inter partes* review of one or more of the patents at issue.  Those petitioners have settled with Zond and are no longer participating in this appeal.

Zond raises only one issue in its appeal—a challenge to the Board's construction of the claim term "without forming an arc."  On appeal, Zond continues to urge an absolutist construction of this phrase that experts on both sides agree would result in a scientific impossibility—requiring no arcing in a plasma chamber when forming a strongly-ionized plasma.  Zond's proposed construction is contradicted not only by its own expert's testimony, but also by the patents' specification, which teaches that a centerpiece of Zond's alleged inventions is to substantially reduce, rather than to completely eliminate, arcing.  Moreover, Zond's absolutist construction would exclude all of the disclosed embodiments of the claimed inventions and—as Zond's expert conceded—would render the claims invalid for lack of enablement.  This Court has long disfavored claim constructions that result in either outcome, much less both.

The Board properly rejected Zond's proposal and instead construed "without forming an arc" to mean, as the specification and all disclosed embodiments teach, that "the possibility of arcing" is "substantially eliminate[d]."  Appx17.  This construction is manifestly consistent with the specification's repeated references to "the probability" of arcing.  The Board's construction is likewise consistent with the understanding of one of skill in the art—the experts on both sides, including Zond's, testified that one of skill would know it to be impossible to completely

- 3 -

eliminate the possibility of arcing in a system of the patents' design. Zond does not contest the unpatentability of its claims under the Board's construction.

Alternatively, even if the Court disagrees with the Board's construction of the relevant claim term, all claims of the '155 and '184 patents are still unpatentable under any reasonable—*i.e.*, not absolutist—construction. That is, the prior art would still invalidate all claims because the claims only require that a single pulse must generate a strongly-ionized plasma "without forming an arc," as opposed to all or even most pulses produced by a device during its lifetime or during processing.

## STATEMENT OF ISSUE ON APPEAL

Whether the Board correctly found the challenged claims of the '155 and '184 Patents unpatentable as obvious under 35 U.S.C. § 103.

## STATEMENT OF THE CASE

### A.     Technology Background

#### 1.     Plasma

There are four states of matter: solid, liquid, gas, and plasma. Appx4990(8:22-9:12). This case deals with the fourth state: plasma. A plasma is a gas that has been "ionized." Appx5335(1:16-20). A gas is ionized when enough energy is applied to separate electrons from the gas atoms, resulting in a collection of positively-charged ions, negatively-charged free electrons, and neutral atoms.

*Id.*; Appx6055. "The negatively charged free electrons and positively charged ions are present in roughly equal numbers such that the plasma as a whole has no overall electrical charge." Appx6055. The "density" of a plasma refers to the number of charged particles—*i.e.*, ions or electrons—per unit volume, and is generally measured as the number of ions per cubic centimeter. *Id.*

A plasma can be created by placing a volume of gas, such as the noble gas argon, between two electrodes, a cathode and an anode, in a chamber, and using a power supply to apply a voltage between the electrodes. Appx60(3:48-56). The energy from an electric field created by the applied voltage ionizes the gas to form a collection of positively-charged argon ions and negatively-charged electrons. Appx59(1:20-24). A magnetic field can be applied to contain the positive argon ions and negative electrons near a particular location within the plasma chamber. Appx60(3:11-21).

Plasmas were used in research and industrial applications for decades before the filing of the applications that resulted in the patents at issue. Appx6055. Specifically, plasma has long been used in an industrial process known as "sputtering." In sputtering, plasma ions are attracted to a "target" material. *Id.* As plasma ions are accelerated toward and collide with the target material, atoms of the target material are dislodged and deposited as a thin film on a surface of a

substrate, "(*e.g.*, a silicon wafer during a semiconductor manufacturing operation)." *Id.*

For example, if a manufacturer wished to coat a silicon substrate with a thin film of metal such as nickel, the manufacturer would create a plasma adjacent to a sheet of nickel serving as the sputtering target. Appx764-765. The nickel target would be used as (or electrically coupled to) the cathode, such that it would attract the positively-charged ions in the plasma. *Id.* When the ions of the plasma collide with the nickel target, nickel atoms are dislodged from the target's surface. *Id.* Through a combination of gravity and (in some instances) electrical forces, these nickel atoms are deposited on the silicon substrate positioned below and opposite the nickel target. *Id.* The nickel atoms then form a uniform layer of nickel film on the silicon substrate. *Id.*

## 2.    Arcing and arc suppression

Plasma generators, including prior art industrial sputtering devices, may experience a phenomenon called "arcing." Arcing occurs when an electrical current forms through the plasma, resulting in a non-uniform, localized region of hot plasma, similar to a lightning bolt or short-circuit. Appx779; Appx1876; Appx1880. Arcing is undesirable in industrial applications because it can damage both the target material and the substrate, thereby ruining the formation of a uniform thin film. Appx779; Appx1876; Appx1880; *see also* Appx60(4:10-13).

Given the undesirability of arcing, almost all prior art sputtering devices incorporated some form of arc reduction or suppression technology before February 22, 2004, the claimed priority date of the two patents at issue. Appx780-783. For instance, power supply manufacturers in the 1990s and early 2000s built arc suppression circuitry into the power supplies of plasma generators, including sputtering devices. *Id.* Generally, these circuits limited arcing by continuously monitoring plasma conditions and reducing the voltage if conditions exceeded a certain value or rose too quickly. Appx60(4:14-18). Once the plasma stabilized, the voltage could be returned to the normal operational level. Other prior art examples include reducing arcing by "pulsing" the power supply—*i.e.*, applying a voltage periodically rather than at a single constant level. Appx780-783. Other prior art techniques include forming a low-density initial plasma to reduce the probability of arcing, a process known as "pre-ionization." Appx783.

## B. The Prior Art

The Board primarily considered two prior art references.

### 1. Wang

U.S. Patent No. 6,413,382 ("Wang") relates to a plasma generation system for sputtering of thin films. Appx708(Abstract). Zond does not dispute that Wang is prior art to the '155 and '184 patents.

In one embodiment, Wang describes a pulsed plasma generator that first

generates an initial, low-density plasma, and then provides high power pulses ($P_P$)

to create a high-density plasma. Appx716(7:13-30). This pulsing over a

background power is illustrated in Figure 6 below:



FIG. 6

Appx712. In this figure, a background power $P_B$ is applied to a gas to ignite and

maintain a low-density plasma. Appx716(7:13-39). Then, periodic high power

pulses $P_P$, which are 10 to 1000 times stronger than the background power, are

applied to generate a high-density plasma. *Id.* The application of high power

pulses causes the existing plasma to spread quickly and increases the density of the

plasma. *Id.* This high-density plasma can be used to deposit thin films of material

onto a substrate. *Id.*(8:24-27).

The background power $P_B$ maintains a low-density plasma between high

power pulses such that a plasma always exists in the chamber. *Id.*(7:13-39). The

application of high power pulses on the low-density plasma prevents arcing during operation. *Id.*(7:46-54) ("The initial plasma ignition needs be performed only once and at much lower power levels so that ***particulates produced by arcing are much reduced***." (emphasis added)). Wang teaches that, when high power pulses are applied to the low-density plasma, there is little change observed in the impedance of the plasma. Appx716(7:48-50). This indicates to a person of ordinary skill in the art that there is no arcing during the application of the high power pulses. *Id.*; *see also* Appx1875-1876.[3] Both sides' experts agreed on this point. For example, Appellees' expert Dr. Bravman opined:

> Wang teaches that 'the chamber impedance changes relatively little between the two power levels $P_B$, $P_P$ since a plasma always exist[s] in the chamber.' [Appx716(7:49-51)]. Under such conditions, one skilled in the art would readily recognize Wang achieved conditions where arcing is avoided. In fact, I understand [Zond's expert] Dr. Hartsough agrees with me on this point. [Appx1493(17-24)] ("Q: But without an abrupt drop in impedance, that's indicative of no arcing; right? … A: That's indicative of no—certainly no unipolar arc…").

Appx1880-1881.

A cross-section of Wang's pulsed plasma generator is reproduced below (all colors added). The generator includes pulsed DC power supply 80 (light blue), argon gas source 32 (orange), wafer (substrate) to be processed 20 (dark blue),

---

[3] Impedance is the effective resistance of an electrical circuit. In plasma sputtering, it refers to the resistance through the plasma. If there is very little change in the resistance of the plasma, that means that the plasma is stable and is not arcing. Appx1493.

target/cathode 14 (green), anode 24 (yellow), and magnet assembly 40 (purple).

Appx714(3:60-4:12).  When the pulsed DC power supply is turned on and a high

power pulse is applied to the target, a high-density plasma is created in region 42

(red).  *Id.*(4:26-31).  This high-density plasma will result in sputtering of the target

material 14, which is deposited on substrate 20.  *Id.*(4:13-19, 4:26-31).



FIG. 1

Appx512.

### 2.    Kudryavtsev

Kudryavtsev is a technical paper that studies the ionization of a plasma with voltage pulses.[4]  Appx907.  Kudryavtsev's only relevance to this appeal is that it describes plasma generation processes that result in explosive increases in electron density and formation of strongly-ionized plasmas.  Appx907.  Zond does not dispute that Kudryavtsev is prior art to the '155 and '184 patents, and does not challenge the relevant disclosure of Kudryavtsev.

### C.    Zond's '184 and '155 Patents

The '155 patent is a divisional of the '184 patent, and the two patents share the same specification and priority date of February 22, 2004.  Appx40; Appx5315.  Both patents are assigned to Zond.  Both patents are directed to using a pulsed power supply to generate a high-density plasma, which the patent refers to as a "strongly-ionized plasma."  Appx40(Abstract).  The '184 patent claims methods and the '155 patent claims apparatuses.[5]

---

[4] A.A. Kudryavtsev & V.N. Skrebov, *Ionization Relaxation in a Plasma Produced by a Pulsed Inert-Gas Discharge*, 28(1) Sov. Phys. Tech. Phys. 30-35 (Jan. 1983).

[5] Since Zond presents identical arguments with respect to the claims of each patent, and because the patents share an identical specification, all references to the specification in this brief refer to the '155 patent specification.

1.    **Background Regarding the '155 and '184 Patents**

Like Wang, the '155 specification describes a plasma chamber for sputtering (shown in Figure 1 below, with colors added) that has pulsed power supply 102 (light blue), gas supply 110 (orange), substrate 138 (dark blue), cathode assembly 116 with target 118 (green), anode 124 (yellow) and magnet system 130 (purple). Appx59-60(2:40-3:41). When the power supply is activated and pulsed, a plasma forms between the target and the substrate in region 134 (red) and sputters particles from target 118 onto substrate 138.



FIG. 1

Appx512.

The claims of the '155 and '184 patents are directed to specific plasma generation methods and systems that use a pulsed power supply to create a voltage

pulse with a controlled amplitude (magnitude) and rise time (how quickly the pulse

reaches the magnitude) to achieve a "strongly ionized" plasma, while minimizing

the probability of forming an arc discharge between the anode and cathode.

Appx339; Appx40(Abstract); Appx69(22:40-53).

The '184 patent has two independent method claims, claims 1 and 11:

1. A method of generating a strongly-ionized plasma, the method comprising:

a) supplying feed gas proximate to an anode and a cathode assembly; and

b) generating a voltage pulse between the anode and the cathode assembly, the voltage pulse having at least one of a controlled amplitude and a controlled rise time that increases an ionization rate so that a rapid increase in electron density and a formation of a strongly-ionized plasma occurs without forming an arc between the anode and the cathode assembly.

Appx5345(22:44-54).

11. A method of generating a strongly-ionized plasma, the method comprising:

a) supplying feed gas proximate to an anode and a cathode assembly; and

b) generating a voltage pulse between the anode and the cathode assembly, the voltage pulse having at least one of a controlled amplitude and a controlled rise time that shifts an electron energy distribution in the plasma to higher energies that increase an ionization rate so as to result in a rapid increase in electron density and a formation of a strongly-ionized plasma without forming an arc between the anode and the cathode assembly.

Appx5346(23:17-28). The patent's dependent claims are directed to further

operational details, none of which is at issue here.

The '155 patent has two independent apparatus claims, claims 1 and 17:

1. A strongly-ionized plasma generator comprising:

a) a chamber for confining a feed gas;

b) an anode that is positioned inside the chamber;

c) a cathode assembly that is positioned adjacent to the anode inside
the chamber; and

d) a pulsed power supply having an output that is electrically
connected between the anode and the cathode assembly, the pulsed
power supply generating at the output a voltage pulse having at least
one of a controlled amplitude and a controlled rise time that increases
an ionization rate of sputtered material atoms so that a rapid increase
in electron density and a formation of a strongly-ionized plasma
occurs without forming an arc between the anode and the cathode
assembly.

Appx69(22:40-53).

17. An apparatus for generating a strongly-ionized plasma, the
apparatus comprising:

a) means for supplying feed gas proximate to an anode and a cathode
assembly;

b) means for generating a voltage pulse that forms a plasma between
the anode and the cathode; and

c) means for controlling an amplitude and a rise time of the voltage
pulse to increase an ionization rate of sputtered material atoms so that
a rapid increase in electron density and a formation of a strongly-
ionized plasma occurs without forming an arc between the anode and
the cathode assembly.

Appx70(24:5-16). The '155 patent's dependent claims are likewise directed to operational details not at issue here.

### D.    Proceedings Below

In 2013, Zond sued several defendants, including Appellees Gillette, AMD, and Renesas, asserting that each defendant infringed at least one of the patents at issue. Appellees petitioned for *inter partes* review, and the Board instituted review of all claims of the two patents.

The Board found all 20 claims of the '184 patent and all 19 claims of the '155 patent unpatentable, concluding that the independent claims and most dependent claims were obvious in view of Wang and Kudryavtsev, while the remaining dependent claims were obvious in light of Wang, Kudryavtsev, and other references (Mozgrin and Yoon) not at issue on appeal. Appx38; Appx2695.

As relevant here, Zond contended below that its claims required "entirely eliminat[ing] arcing after ignition" (Appx367), whereas Wang and Kudryavtsev only taught arc *reduction*, not the complete elimination of arcing (*e.g.*, Appx335-337). The Board recognized that Zond's argument depended on an "implicit construction" of the claim term "without forming an arc," which appears in all independent claims of both patents. Appx17.

The Board concluded that Zond's implicit construction was incorrect because its patents neither disclose nor claim a plasma generation process

"performed *completely* free of arcing."  Appx16-17; *see also* Appx14 (explaining that Zond's arguments were "based on an incorrect interpretation of this claim phrase").  Instead, an artisan of ordinary skill would have understood the patents to claim and the specifications to teach that "the possibility of arcing" would be "substantially eliminate[d]" through use of the claimed methods and apparatuses. Appx17.

The Board interpreted the claim language in light of the specification, which describes arcing in probabilistic terms, as well as undisputed testimony from Zond's expert, who  admitted in his deposition that "[o]ne can't say that an arc would never occur in a system using this [invention].  If something else happens, an arc could occur, like a flake falling on a target.  So you can't say that an arc would never occur in a system."  Appx3975-3976.

The  specification teaches that the pulsed power supply in the patents' Figure 1 can include arc suppression circuitry that "minimizes or eliminates the *probability* of arcing."  Appx16 (citing Appx60(4:8-17)).  Similarly, the portion of the specification describing the patents' Figure 2 refers to changes in "the probability of arcing."  *Id.* (citing Appx61(5:25-30)).  Likewise, the description of Figure 9 explains how the claimed invention "can reduce the probability that an electrical breakdown condition (*i.e.*, arcing) will develop in the chamber."  Appx16

(citing Appx68(19:31-33, 20:36-37)); *see also id.* ("The geometry … can be chosen to minimize the probability of arcing.").

Because the specification describes arcing in terms of relative probabilities and because of the agreed expert testimony on this issue and, the Board declined to adopt Zond's implicit construction that the claims require a method or apparatus that is "*completely* free of arcing." Appx16-17. As the Board explained, Zond's implicit construction was "unreasonable" because it would "exclude the disclosed embodiments, all of which stop short of such a guarantee." Appx27. Thus, the Board construed "without forming an arc" to mean "substantially eliminating the possibility of arcing." Appx17.

The Board concluded that all of Zond's challenged claims were unpatentable. Appx38; Appx5312.

## SUMMARY OF THE ARGUMENT

The Board's construction of "without forming an arc" is correct. The specification consistently refers to reducing or minimizing "the probability" of arcing. The testimony from Zond's expert likewise establishes that an artisan of ordinary skill would have understood the likelihood of arcing in probabilistic, relative terms. Indeed, Zond's expert conceded that it would be impossible to eliminate completely the possibility of arcing in any system. Further, Zond's expert explicitly agreed that one of ordinary skill would ***not*** understand the claim

language "without forming an arc" to require "eliminating the probability of arcing 100 percent of the time."  Appx1362.

Moreover, Zond's proposed construction of "without forming an arc" is inconsistent with longstanding principles of claim construction recognized by this Court.  The Board correctly concluded that Zond's construction would exclude every embodiment disclosed in the specification, which all teach reducing or minimizing the probability of arcing, rather than completely eliminating it.  Zond's expert also conceded that Zond's proposed construction would render the claims invalid for lack of enablement.  This Court has long disfavored constructions that exclude all disclosed embodiments or render claims invalid.  Where Zond's absolutist construction would lead to both disfavored outcomes, the Board was plainly justified in rejecting it.

The Board properly construed "without forming an arc" to teach that "the possibility of arcing" would be "substantially eliminate[d]."  Appx1.

Alternatively, even if the Court disagrees with the Board's construction, all claims of the '155 and '184 patents are still unpatentable under any reasonable— *i.e.*, not absolutist—construction.  The prior art of record still invalidates all claims because the claims only require that a single pulse, or even most pulses (as opposed to all pulses) generate a strongly-ionized plasma "without forming an arc."

The Board's finding of unpatentability should be affirmed.

## ARGUMENT

## I.    STANDARD OF REVIEW

The Board's legal determinations are reviewed de novo, and its factual findings for substantial evidence. *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014).

Claim construction is reviewed de novo, but the Board's factual findings underlying claim construction must be given deference and reviewed for substantial evidence. *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1297 (Fed. Cir. 2015) (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 837-838 (2015)). For *inter partes* reviews of unexpired patents, this Court asks "whether [] the Board properly construed the claims under the broadest reasonable interpretation standard." *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1279 (Fed. Cir. 2015), *aff'd*, No. 15-446, slip op. 20 (U.S. June 20, 2016).

Obviousness is a legal conclusion reviewed de novo, based on underlying factual findings reviewed for substantial evidence. *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007). The underlying factual findings reviewed for substantial evidence include: "(1) the scope and content of the prior art; (2) the differences between the prior art and the claimed invention; (3) the level of

ordinary skill in the art; and (4) any relevant secondary considerations." *Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1351 (Fed. Cir. 2010).

## II.   THE BOARD PROPERLY FOUND THE '184 AND '155 CLAIMS UNPATENTABLE

### A.   The Board Properly Construed "Without Forming An Arc"

Zond seeks to give the phrase "without forming an arc" an unreasonable construction, namely that an arc would ***never*** form during use of the claimed methods or apparatus. Br. 18. The Board correctly recognized that neither the agreed expert testimony nor the shared specification of the '155 and '184 patents is consistent with such a construction.

First, Zond's position is inconsistent with the patent specification. The specification's limited references to arcing consistently refer to the likelihood of arcing in relative terms, not absolute terms. For example, with respect to Figure 9, the specification describes adjusting the gap between the cathode and anode of the plasma sputtering device, which "can reduce ***the probability*** that an electrical breakdown condition (*i.e.*, arcing) will develop in the chamber." Appx68(19:31-33) (emphasis added); *see also id.*(20:36-40) ("The geometry of the gap … can be chosen to ***minimize the probability*** of arcing." (emphasis added)); Appx61(5:25-30) ("Sputtering with discharge voltages greater than -800V can be undesirable because such high voltages can increase ***the probability*** of arcing." (emphasis added)). The specification does not disclose any method or apparatus that

guarantees the elimination of arcing during plasma generation.  As the Board

explained at oral argument, "we have to look at the limitation in view of the

specification" (Appx577), an indisputably correct application of the law that the

Board reiterated in its decision.  Appx17 (citing *In re NTP, Inc.*, 654 F.3d 1279,

1288 (Fed. Cir. 2011); *In re Cortright*, 165 F.3d 1353, 1358 (Fed. Cir. 1999)); *see*

*also Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (en banc);

*Howmedica Osteonics Corp. v. Zimmer, Inc.*, No. 15-1232, 2016 WL 2754049, at

*6 (Fed. Cir. May 12, 2016) ("look[ing] to the written description for a full

understanding of the claims").

On appeal, Zond emphasizes for the first time a single line of the

specification that describes arc suppression circuitry in the power supply, which

recites a "pulsed power supply [that] can include circuitry that minimizes or

eliminates the probability of arcing in the chamber."  Appx60(4:7-10).  Zond

suggests that this line means that "*no* arcing occurs" in its claimed invention.  Br.

21.  But as the Board recognized, even this line of the specification still focuses on

the relative "probability" that arcing will occur.  Appx17.  It is hardly a definitive

statement that the claimed invention will never experience arcing.  Quite the

contrary, the specification reflects uncertainty—stating that the circuitry described

will "minimize[] *or* eliminate[] the probability of arcing."  Appx60(4:8-10)

(emphasis added).  That is, a device that "minimizes" arcing would be

encompassed by this embodiment.  Particularly in light of the uncertainty reflected in this line of the specification, the specification's other references to changes in the relative "probability" of arcing, and Zond's own expert's testimony that the patented methods and apparatus will not completely eliminate arcing, the Board correctly concluded that the patents are directed to "substantially eliminating the possibility of arcing."  Appx5292.

Second, Zond's position is unsupported by the evidence presented to the Board.  Zond's own expert conceded that the claim term "without forming an arc" does **not** require eliminating the probability of arcing 100% of the time:

> [Q.] Does the language "without forming an arc" in claim 1 of the '155 patent require eliminating the probability of arcing 100 percent of the time, "yes" or "no"?  …
>
> [A.] No.

Appx1362; *see also* Appx3976-3982 (Zond's expert agreeing that "you can't say that an arc would never occur in a system," and that interpreting a claim to require the elimination of all probabilities of arcing would require an impossibility and thus "eliminate the validity … of that claim").

Thus, the Board's construction, which requires "***substantially*** eliminating the possibility of arcing," is the only construction consistent with the testimony of Zond's own expert.

Third, Zond's proposed construction violates the principle that this Court "normally do[es] not interpret claim terms in a way that excludes embodiments disclosed in the specification." *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2006) (listing cases). Based on the evidence submitted by both parties, the Board found that "Zond's implicit construction" of "absolutely no arcing … would be unreasonable [because it would] ***exclude*** the disclosed embodiments" that teach reducing or minimizing the probability of arcing. Appx5291 (emphasis added). The Board correctly recognized that Zond's construction requiring "a ***guarantee*** of eliminating ***all possibility*** of an electrical breakdown condition or arcing" would "exclude the disclosed embodiments, all of which stop short of such a guarantee," Appx27 (emphases added), and it properly rejected that construction as "unreasonable," *id.*

Fourth, Zond's construction violates the canon that claims should be construed to preserve their validity. *See Phillips,* 415 F.3d at 1327. As Zond's own expert acknowledged, the '155 and '184 patents do not disclose a system capable of guaranteeing the complete elimination of arcing. Appx3976-3982. When asked whether the claims should be construed to require the elimination of all possible arcing, Zond's expert Dr. Hartsough, acknowledged that such an interpretation requires a physical impossibility and thus would "eliminate the validity…of that claim." *Id.* Thus, if the claims are construed according to Zond's

proposal, they would be invalid under 35 U.S.C. § 112, ¶ 1 for lack of enablement. *See id.* Accordingly, the only logical way to construe the "without forming an arc" limitation is as the Board did it: "substantially eliminating the possibility of arcing."

Zond's attempt to escape the Board's reasonable construction requires Zond to impose an absolutist reading of the phrase "without forming an arc" that is unsupported by the specification and to contradict the sworn testimony of its own expert and  Br. 23.  This Court has frequently construed seemingly absolute claim language to have a non-absolute meaning where the specification so teaches.  *See, e.g.*, *Kaneka Corp. v. Xiamen Kingdomway Group Co.*, 790 F.3d 1298, 1303-1305 (Fed. Cir. 2015) (reversing district court's dictionary-based construction of "sealed tank" as meaning "closed to prevent the entry or exit of materials," where disclosure depicted liquid flowing into and out of tanks); *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1334-1335 (Fed. Cir. 2010) (construing "synchronously" to mean "just before or at the same time" instead of only "at the same time," in light of examples in specification); *Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1289, 1309 (Fed. Cir.) ("We construe a 'non-flowing manner' to mean that a sample 'is not moving in the sample chamber during the measurement,' other than motion attributable to … qualities inherent to all liquids."), *reh'g en banc granted on other grounds*, 374 F. App'x 35 (Fed. Cir. 2010), *opinion reinstated in part*,

649 F.3d 1276 (Fed. Cir. 2011); *Chimie v. PPG Indus. Inc.*, 402 F.3d 1371, 1377

(Fed. Cir. 2005) (rejecting proposed construction of "dust-free and non-dusting" as

meaning "no dust cloud whatsoever," where such a construction would be

inconsistent with specification and exclude the preferred embodiment).

Just as this Court reversed the district court's narrow construction of "non-

flowing manner" in *Therasense* because it was inconsistent with the inherent

physical properties of liquids, 593 F.3d at 1309, Zond's proposed construction in

this case is flatly inconsistent with the inherent physical properties of plasmas. *See*

Appx3976 (Zond's expert, Dr. Hartsough, admitting that "you can't say that an arc

would never occur in a system"). As this Court has recognized, "a claim

interpretation that would exclude the inventor's device is rarely the correct

interpretation." *Modine Mfg. Co. v. ITC*, 75 F.3d 1545, 1550 (Fed. Cir. 1996),

*abrogated on other grounds by Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki*

*Co.*, 234 F.3d 558 (Fed. Cir. 2000). Yet that is precisely the type of construction

Zond advocates, and it should be rejected.[6]

---

[6] Accordingly, Zond's request that this Court "reverse[]" the Board's decision (Br.
27) is meritless. If, however, the Court concludes that the Board improperly
construed "without forming an arc"—though it should not—that would lead at
most to a remand. *See Microsoft*, 789 F.3d at 1308 (remanding for reconsideration
under corrected claim construction).

Zond does not dispute that Wang meets this limitation under the Board's construction of "without forming an arc."  Because the Board's construction is correct, this Court should affirm the Board's finding of unpatentability.

### B.    Wang Meets The "Without Forming An Arc" Limitation Under Any Reasonable Claim Construction

As explained above, Zond's proposed absolutist construction leads to a physical impossibility that is unsupported by the claims, specification, and either party's expert.  Even if one could plausibly ignore both the concessions of Zond's expert and the disclosure of the specification, the '155 and '184 patents would still be invalid under any reasonable claim interpretation consistent with the patent specification.

As explained above, Zond's expert conceded that a system that eliminates arcing 100% of the time would be scientifically impossible and, indeed, the claims do not require the elimination of arcing 100% of the time.  Appx1362 ("[Q.] Does the language "without forming an arc" in claim 1 of the '155 patent require eliminating the probability of arcing 100 percent of the time, "yes" or "no"? … [A.] No."), Appx3976-3982 ("[Y]ou can't say that an arc would never occur in a system that was practicing that -- this.").

However, in testimony apparently now disclaimed by Zond, its own expert Dr. Hartsough contended that the claim term "without forming an arc" should be evaluated on a pulse-by-pulse basis and agreed that, as long as the prior art

discloses a single pulse that does not arc, then the term is taught by that reference. Appx1361-1364.  A patent cannot claim more than what is disclosed and enabled by its written disclosure.  *LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344-1345 (Fed. Cir. 2005).  Therefore, because the claim limitation "without forming an arc" is only required of a single pulse that forms a strongly-ionized plasma without an arc, as opposed to all pulses or strongly-ionized plasmas created by a machine or during a process, the prior art discloses such a device and a process.

Specifically, Wang teaches that, after the initial plasma is created, "the chamber impedance changes relatively little between the two power levels $P_B$, $P_P$ since a plasma always exists in the chamber."  Appx716(7:49-51).  It is undisputed that the presence of an arc necessarily requires a drastic change in impedance caused by an electrical current striking through the ionized gas.  *See supra* p. 9.  In light of the undisputed expert testimony that arcing can never be completely eliminated in the sputtering chamber, Wang's teaching of stable impedance during application of high power pulses comes as close as scientifically possible to a guarantee of no arcing.  Furthermore, Wang teaches that because a low-density plasma is maintained using background power $P_B$, the probability that arcing will occur during the transition to a high-density plasma using power pulse $P_P$ will be "***much reduced***."  Appx716(7:47-49) (emphasis added); *see also* Appx29

("[B]ecause 'the plasma need not be reignited thereafter, the likelihood of arcing would be ***significantly reduced*** during subsequent applications of the background and peak power levels, $P_B$ and $P_P$.'" (emphasis added, quoting Appellees' expert Mr. DeVito)).  In other words, Wang discloses a device that, while not ***absolutely*** eliminating arcing—which both experts agree is physically impossible (*see supra* pp. 21-24)—it substantially avoids arcing when each high power pulse is applied to form a strongly-ionized plasma.  Appx1880-1881 ("Under such conditions, one skilled in the art would readily recognize Wang achieved conditions where arcing is avoided.").  Thus, Wang's disclosure of very little change in the impedance of the plasma coupled with its goal to significantly reduce the likelihood of arcing indicates to a person of ordinary skill in the art that the plasma is stable and is not experiencing arcing conditions during the low-to-high-density transition. Appx1492-1493.

Appellees' expert Dr. Bravman and Zond's expert Dr. Hartsough both agreed that Wang discloses generating a strongly-ionized plasma with one pulse without forming an arc in that instance.  For example, Dr. Hartsough testified without equivocation that:

> Q. So in Wang, at times arcing may occur, and at other times it may not occur; correct? …
>
> A. Correct. …

Appx1353-1354.

Q. And in Wang, arcing may occur between some pulses and may not
occur between other pulses because ***Wang significantly reduces the
probability of arcing***; correct? …

[A.] Yes.

Appx1360-1361 (emphasis added).  Wang indisputably discloses a device that

***significantly reduces*** the probability of arcing.  Appx1360-1361; Appx29.  Thus,

in those frequent instances where the Wang device generates a strongly-ionized

plasma ***without*** producing an arc, Wang meets the claim limitation.  Put in Zond's

expert's own words, "[i]f Wang produces a pulse that doesn't arc, ***then Wang

meets the 'does not arc' part of that claim.  They match.***"  Appx1364 (emphasis

added).  Appellees' expert Dr. Bravman agreed that "one skilled in the art would

readily recognize Wang achieved conditions where arcing is avoided," and

therefore "Wang teaches forming the strongly-ionized plasma without forming an

arc."  Appx1880-1881.

Thus, even if Zond argues that the "without forming an arc" limitation

means not forming an arc at all in the claimed system or during the claimed

process of creating a strongly-ionized plasma, Wang meets the limitation because

it teaches how to generate a strongly-ionized plasma without forming an arc during

at least a single pulse or, indeed, even most pulses.  Accordingly, the claims of the

'155 and '184 patents are unpatentable under any reasonable—*i.e.*, not absolutist—

construction.  This Court may affirm the Board's decision "if it is clear that 'the

- 29 -

agency would have reached the same ultimate result' had it considered the new ground." *In re Watts*, 354 F.3d 1362, 1370 (Fed. Cir. 2004); *see also In re Man Mach. Interface Techs. LLC*, No. 15-1562, __ F.3d __, 2016 WL 1567181, at *4 (Fed. Cir. Apr. 19, 2016) (affirming Board's conclusion of obviousness under newly adopted claim construction).

## CONCLUSION

The Board's decisions should be affirmed.

Respectfully submitted,

/s/ Ryan K. Yagura
RYAN K. YAGURA
XIN-YI ZHOU
O'MELVENY & MYERS LLP
400 South Hope Street
Los Angeles, CA 90071
(213) 430-6000

BRADLEY N. GARCIA
O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC 20006
(202) 383-5300

*Attorneys for Appellee Advanced Micro Devices, Inc.*

/s/ Mark G. Matuschak
MARK G. MATUSCHAK
MARK C. FLEMING
ERIC F. FLETCHER
LARISSA BIFANO PARK
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA 02109
(617) 526-6000

DAVID L. CAVANAUGH
WILMER CUTLER PICKERING
    HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000

*Attorneys for Appellee The Gillette Company*

/s/ John J. Feldhaus
JOHN J. FELDHAUS
PAVAN K. AGARWAL
MICHAEL R. HOUSTON
GEORGE E. QUILLIN
FOLEY & LARDNER LLP
3000 K Street, NW, Suite 600
Washington, DC  20007
(202) 672-5300


MICHAEL R. HOUSTON
FOLEY & LARDNER LLP
321 North Clark Street, Suite 2800
Chicago, IL  60654
(312) 832-4500

*Attorneys for Appellees Renesas
Electronics Corporation and Renesas
Electronics America, Inc.*

June 20, 2016

## ECF-3(B)(2) REPRESENTATION

Pursuant to this Court's Administrative Order Regarding Electronic Case Filing, the undersigned represents under ECF-3(b)(2) that counsel for Appellees Advanced Micro Devices, Inc., Renesas Electronics Corporation, and Renesas Electronics America, Inc., have consented to their signatures on this brief and the Certificates of Interest.

Dated:  June 20, 2016            /s/ Mark G. Matuschak
                                              MARK G. MATUSCHAK
                                              WILMER CUTLER PICKERING
                                                  HALE AND DORR LLP
                                              60 STATE STREET
                                              BOSTON, MA  02109
                                              (617) 526-6000

# CERTIFICATE OF SERVICE

I hereby certify that, on this 20th day of June, 2016 I filed the foregoing

Brief for Appellees with the Clerk of the United States Court of Appeals for the

Federal Circuit via the CM/ECF system, which will send notice of such filing to all

registered CM/ECF users.

/s/ Mark G. Matuschak
MARK G. MATUSCHAK
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 STATE STREET
BOSTON, MA  02109
(617) 526-6000

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned hereby certifies that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and Circuit Rule 32(b).

1.     Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(a)(7)(B), the brief contains 5,814 words.

2.     The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font.  As permitted by Fed. R. App. P. 32(a)(7)(C), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mark G. Matuschak
MARK G. MATUSCHAK
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 STATE STREET
BOSTON, MA  02109
(617) 526-6000

June 20, 2016